1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

                              ----oo0oo----

11

12 KIRK LUND,                          NO. CIV. S-06-0431 WBS KJM

13           Plaintiff,
                                        ORDER RE: MOTION FOR
14      v.                              SUMMARY JUDGMENT

15 LEPRINO FOODS COMPANY; and
   DOES 1 through 10, inclusive,
16
            Defendants.
17

18                            ----oo0oo----

19         Plaintiff Kirk Lund brings this action alleging

20 wrongful termination in violation of California Labor Code

21 sections 1102.5 and 6310, and common law wrongful termination

22 contrary to public policy.  Jurisdiction exists pursuant to the

23 uncontested diversity of the parties.  28 U.S.C. §§ 1332,

24 1441(b).  Defendant Leprino Foods Company ("LFC") now moves for

25 summary judgment pursuant to Federal Rule of Civil Procedure 56.

26 I.   Factual and Procedural Background

27      A.   Leprino Foods Company

28           Defendant LFC is a corporation organized under, and

1  headquartered in, Denver, Colorado.  (Not. of Removal ¶ 6.)  LFC

2  manufactures cheese and whey products at plants throughout the

3  country, including its facility in Tracy, California.

4  (Declaration of Joel Krein ¶ 2.)  Each LFC facility possesses a

5  complex ammonia refrigeration system that is an integral part of

6  the manufacturing and storage of LFC's products.  (Id. ¶ 6.)  Due

7  to LFC's use of anhydrous ammonia, their operations are regulated

8  by various federal, state, and local laws, including the Clear

9  Air Act and the Occupational Health and Safety Act ("OSHA").

10 (Id.)  LFC has implemented policies and procedures to ensure

11 compliance with these regulations.  (Id. Exs. A, B.)

12       At the corporate level, LFC has a team of individuals

13 designated to ensure compliance with, and provide guidance on,

14 LFC's environmental and safety programs.  (Id. ¶ 8.)[1]  At the

15 local level, each facility employs a Safety Supervisor, whose

16 primary purpose is to ensure that the facility is in compliance

17 with applicable laws.  (Id. ¶ 10.)  Specifically, the Safety

18 Supervisor must maintain the facility's statutory safety plans,

19 provide and track employee training, investigate and report on

20 accidents and chemical spills, oversee the facility's response

21 teams, maintain documentation and signage, complete various

22 regular reports, maintain action plans for items to be addressed,

23 and proactively address any other safety issues that arise.  (Id.

24 ¶¶ 6, 9, Ex. A at p. 5, Ex. B at p.4.)

25 ///

26 ─────────────────────

27       [1]    These individuals include Ted Babkowski, Director of
   Maintenance Operations, Robert Garcia, Director of Technical
   Services and Environmental Operations, and Jim Winningham,

28 Corporate Safety Manager.  (Krein Decl. ¶ 8.)

1    B.   <u>Plaintiff Lund</u>

2         On October 13, 2003, LFC hired plaintiff as its Tracy

3  facility Safety Supervisor.  (Compl. ¶ 7.)  Plaintiff's direct

4  supervisor was Tracy Human Resources Manager Vasco Raposo, who

5  reported to Plant Manager Joel Krein.[2]  (Krein Decl. ¶ 5.)

6  Plaintiff's responsibilities included ensuring compliance with

7  state and federal safety requirements, identifying unsafe working

8  conditions, making recommendations to fix them, and at times

9  interacting with, and reporting incidents to, various outside

10  governmental agencies.  (Lund Depo. 73:7-18, 820:25-821:2, 92:5-

11  93:6 698:2-13.)

12         As part of those responsibilities, plaintiff assisted

13  in the preparation of reports related to accidents at the Tracy

14  facility, by investigating and documenting any incidents

15  involving a release of hazardous chemicals.  (<u>Id.</u> 741:25-743:4)

16  Plaintiff was required to notify the corporate office of any

17  release or exposure incident that could require a report to

18  government agencies.[3]  (<u>Id.</u> Ex. A at p. 6, Ex. B at pp. 2-3.)

19  _____

20         [2]   At the time plaintiff was hired, Daryl Larson was the
Plant Manager.  In mid-June, 2004, Larson left the company, and
21  Krein took over as Acting Plant Manager.

22         [3]   Federal law requires reporting a release of ammonia
greater than 100 pounds.  40 C.F.R. § 355, Appendix A.  State law
23  requires a telephone call reporting all "significant spills or
threatened releases," and a subsequent written follow-up report
24  within seven days if the amount exceeded federal reportable
quantities (i.e. 100 pounds).  (Def's Req. for Judicial Notice
25  Ex. 1.)
         Under Federal Rule of Evidence 201(b), the court may
26  take judicial notice of documents "capable of accurate and ready
determination by resort to sources whose accuracy cannot
27  reasonably be questioned."  Accordingly the court will grant
defendant's request for judicial notice of the two documents on
28  the state Emergency Services' website.  <u>See Hendrickson v. eBay,</u>

3

1  Plaintiff, as well as all others who served on incident

2  investigation teams, was also required to fill out internal

3  "Process Incident Investigation" ("PII") forms detailing the

4  incident, underlying causes, and recommendations for avoiding

5  similar accidents in the future.  (Krein Decl. ¶ 25; Lund depo.

6  745:12-19.)  Plaintiff did so on many occasions throughout his

7  employment.  (Id.)

8        C.   November 17, 2004 Incident

9            On November 17, 2004, approximately seven pounds of

10  ammonia was accidentally released when a contractor opened a

11  valve with his foot.  (Lund Depo. 351:4-352:3.)  After the valve

12  was closed, and various safety precautions taken, plaintiff, as

13  well as Plant Engineer Reed Azevedo and Maintenance Manager

14  Daniel Hudspeth notified the corporate office and spoke with

15  managers about the release.  (Id. 716-721.)  They determined that

16  notification to the National Warning Center was not necessary,

17  because the release was less than 100 pounds, but that they would

18  notify the State Warning Center and the San Joaquin Office of

19  Emergency Services ("OES").  (Id.)

20            Pursuant to their policy, LFC assembled an incident

21  investigation team (of which plaintiff was a member) tasked with

22  investigating the incident, and preparing a PII form and

23  memorandum of their findings and recommendations.  (Id. 734:12-

24  735:19.)  Plaintiff also prepared a state "Emergency Relase

25  Follow-Up Notice Reporting Form," but LFC ultimately concluded

26

27  Inc., 165 F. Supp. 2d 1082, 1084 (C.D. Cal. 2001); Caldwell v.

28  Caldwell, 420 F. Supp. 1102, 1105 n.3 (N.D. Cal. 2006).

4

1  that written follow-up was not required because the leak was
2  under 100 pounds.  (Id. 785:12-23, 787:24-788:9; Krein Decl. ¶
3  26.)  Accordingly, the form was never submitted.  (Id.)

4        During the course of the investigation into the
5  November 17, 2004 ammonia release, plaintiff learned that there
6  has been a caustic leak several weeks prior.  (Id. 658:25-
7  659:19.)  Plaintiff sent an email to Plant Engineer Azevedo,
8  seeking details of the incident.  (Id. Ex. 23.)  Azevedo
9  explained that there had been a leak due to failure in piping,
10 but that the caustic material had stayed contained, gone into the
11 company's own process sewer, and was neutralized in the company's
12 wastewater system.  (Id.)  Accordingly, no further action was
13 taken.

14      D.  Plaintiff's Termination

15      On October 31, 2004, plaintiff's supervisor Raposo
16 began plaintiff's annual performance review process.  (Raposo
17 Depo. 48:19-24.)  On November 16, 2004, Raposo sent Krein an
18 email with proposed performance ratings and salaries for
19 employees in the plant.  (Raposo Depo. 95:16-96:15; Krein Decl. ¶
20 19.)  Raposo recommended a performance rating of 2.09,[4] and a
21 salary increase of 1.5% for plaintiff, both well below average.
22 (Krein Depo. 83-84.)  After reviewing Raposo's proposed
23 evaluation, Krein advised Raposo that he wanted him to take
24 stronger action, and that while the decision was ultimately
25 Raposo's, Krein would support a termination decision.  (Raposo

26

27      [4]  LFC uses a performance rating scale from zero to four,
    2.0 representing the bare minimum of meeting expectations.
28  (Krein Depo. 83:23-84:11.)

5

1  Depo. 23:21-24:20, 97:10-100:8; Krein Depo. 12:11-13:1, 24:7-
2  25:4, 42:19-14.)

3       Raposo subsequently modified plaintiff's performance
4  review, arriving at an overall performance rating of 1.67.
5  (Raposo Depo. 96:16-97:24; Krein Depo. Ex. 24.)  On December 3,
6  2004, Raposo met with plaintiff in his office, reviewed the
7  performance issues, and informed plaintiff of his decision to
8  terminate his employment.  (Lund Depo. 820:2-14, Ex. 35; Raposo
9  Depo. 20:6-21:6.)  On November 10, 2005, plaintiff filed a
10 complaint in the Superior Court of California, for the County of
11 San Joaquin, which was subsequently removed to this court on
12 March 1, 2006.  (Notice of Removal.)  The complaint alleges three
13 causes of action against LFC: 1) violation of California Labor
14 Code § 1102.5(b); 2) violation of California Labor Code 6310; and
15 3) common law wrongful termination in violation of public policy.
16 (Compl. ¶¶ 22-29.)  Defendant removed the case based on diversity
17 jurisdiction pursuant to 28 U.S.C. § 1441(b).  (Not. of Removal.)
18 On April 30, 2007, defendant filed this motion for summary
19 judgment on all claims.

20 II.  <u>Discussion</u>

21      A.   <u>Legal Standard</u>

22      Summary judgment is proper "if the pleadings,
23 depositions, answers to interrogatories, and admissions on file,
24 together with the affidavits, if any, show that there is no
25 genuine issue as to any material fact and that the moving party
26 is entitled to judgment as a matter of law."  Fed. R. Civ. P.
27 56(c).  A material fact is one that could affect the outcome of
28 the suit, and a genuine issue is one that could permit a

1  reasonable jury to enter a verdict in the non-moving party's

2  favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

3  (1986).  The party moving for summary judgment bears the initial

4  burden of establishing the absence of a genuine issue of material

5  fact and can satisfy this burden by presenting evidence that

6  negates an essential element of the non-moving party's case.

7  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

8  Alternatively, the movant can demonstrate that the non-moving

9  party cannot provide evidence to support an essential element

10  upon which it will bear the burden of proof at trial.   <u>Id.</u>

11        Once the moving party meets its initial burden, the

12  non-moving party must "go beyond the pleadings and by her own

13  affidavits, or by 'the depositions, answers to interrogatories,

14  and admissions on file,' [and] designate 'specific facts showing

15  that there is a genuine issue for trial.'"  <u>Id.</u> at 324 (quoting

16  Fed. R. Civ. P. 56(e)).  The non-movant "may not rest upon the

17  mere allegations or denials of the adverse party's pleading."

18  Fed. R. Civ. P. 56(e); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135,

19  1137 (9th Cir. 1989).  However, any inferences drawn from the

20  underlying facts must be viewed in the light most favorable to

21  the party opposing the motion.  <u>Matsushita Elec. Indus. Co., Ltd.</u>

22  <u>v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

23       B.   <u>Labor Code Sections 1102.5(b) and 6310</u>

24        The "rule of exhaustion of administrative remedies is

25  well established in California jurisprudence . . . ."  <u>Campbell</u>

26  <u>v. Regents of the Univ. Of Cal.</u>, 35 Cal.4th 311, 321 (2005).  The

27  essence of that rule is that "where an administrative remedy is

28  provided by statute, relief must be sought from the

7

administrative body and this remedy exhausted before the courts will act." <u>Id.</u>  (quoting <u>Abelleira v. Dist. Court of Appeal</u>, 17 Cal.2d 280, 292 (1941)).  Exhaustion of administrative remedies is a "jurisdictional prerequisite to resort to the courts," not a matter of judicial discretion.  <u>Johnson v. City of Loma Linda</u>, 24 Cal.4th 61, 70 (2000); <u>Palmer v. Regents of Univ. of Cal.</u>, 107 Cal.App.4th 899, 904 (2003) (same, in the context of FEHA); <u>George Arakelian Farms, Inc. v. Agric. Labor Relations Bd.</u>, 40 Cal.3d 654 (1985) (same, in the context of challenging an adverse labor board decision); <u>Abelleira</u>, 17 Cal.2d at 293 (citing <u>Myers v. Bethlehem Shipbuilding Corp.</u>, 303 U.S. 41 (1938) (National Labor Relations Board); <u>Prentis v. Atlantic Coast Line</u>, 211 U.S. 210 (1908) (rate orders); <u>Porter v. Investors' Syndicate</u>, 286 U.S. 461, 468 (1932) (investment commissioners and permit of investment company); <u>United States v. Sing Tuck</u>, 194 U.S. 161 (1904) (immigration and the powers of the Secretary of Labor); <u>Gorham Mfg. Co. v. State Tax Comm'n</u>, 266 U.S. 265 (1924) (tax board); <u>et al.</u>).

Plaintiff's first two causes of action allege violations of California Labor Code sections 1102.5 and 6310. (Compl. ¶¶ 22-27.)  Section 1102.5(b) protects from retaliation an employee who discloses information to a governmental agency of his employer's violation of a statute or law.  Section 6310 protects from retaliation an employee who makes a "bona fide oral or written complaint . . . of unsafe working conditions or work practices in [their] employment or place of employment."  Both of these statutory schemes contain remedial provisions allowing for the filing of a complaint before the California Labor

1  Commissioner pursuant to California Labor Code section 98.7.

2  Cal. Lab. Code §§ 98.6(b), 6312.  The fact these administrative

3  remedies are neither mandatory nor exclusive does not abrogate

4  the exhaustion requirement.  <u>See</u> <u>Neveu v. City of Fresno</u>, 392 F.

5  Supp. 2d 1159, 1179-80 (E.D. Cal. 2005); <u>Campbell</u>, 35 Cal.4th at

6  333.

7         This court previously addressed whether administrative

8  remedies must be exhausted in the context of a different

9  retaliation statute, holding that section 98.7 does <u>not</u> mean that

10  employees may "immediately file civil suits based on the

11  provisions of the Labor Code in lieu of first pursuing the

12  provided administrative remedies when the substantive Labor Code

13  provision at issue . . . does not explicitly authorize a direct

14  civil suit as an alternative to the use of administrative

15  procedures."  <u>Gutierrez v. RWD Techs., Inc.</u>  279 F. Supp. 2d

16  1223, 1227 (E.D. Cal. 2003) (in the context of California Labor

17  Code section 230, which prohibits retaliation against employees

18  who must take time off of work for jury service).  While the

19  specific labor code provisions at issue were different, the

20  court's prior analysis is directly on point, explaining why its

21  conclusion must follow from "(1) the general rule that exhaustion

22  of administrative remedies is required before a statutory claim

23  can be brought; (2) the statutory framework encompassing section

24  98.7; and (3) the public policies underlying the exhaustion

25  requirement."  <u>Id.</u> at 1228.

26         Thus, in order to bring a claim under section 1102.5 or

27  6310, plaintiff must exhaust his administrative remedies.  <u>See</u>

28  <u>Neveu</u>, 392 F. Supp. 2d at 1180 (holding that plaintiff's claim

9

1 under section 1102.5 must be dismissed for failure to exhaust);

2 Campbell, 35 Cal.4th at 333 (holding that plaintiff's statutory

3 claims, including a claim under section 1102.5, should have been

4 exhausted before proceeding to suit); Smedley v. Capps, Staples,

5 Ward, Hastings and Dodson, 820 F. Supp. 1227 (N.D. Cal. 1993)

6 (holding that plaintiff's claim under section 6310 must be

7 dismissed for failure to previously file a complaint with the

8 Labor Commissioner).  Plaintiff has not alleged that he pursued

9 any administrative remedies prior to filing suit.  (Compl.)

10 Accordingly, the court will grant summary judgment for defendant

11 on plaintiff's first and second causes of action.  See Campbell,

12 35 Cal.4th at 232 ("[T]he policy considerations which support the

13 imposition of a general exhaustion requirement remain compelling

14 . . . . The logic holds even when no internal damage remedy is

15 available, or a plaintiff seeks only money damages, so that

16 resort to the courts is inevitable.").

17     Plaintiff cites to a recent decision by Judge England,

18 Paterson v. Cal. Dep't of Gen. Svcs., which he contends directly

19 contradicts Neveu.  2007 WL 756954, at *7 (E.D. Cal. Mar. 8,

20 2007).  Paterson, however, is easily distinguishable.  In

21 Paterson, Judge England noted that the California court in

22 Campbell did create an exhaustion requirement, but held that

23 because the plaintiff filed claims with the DFEH and EEOC with

24 respect to the same conduct underlying her § 1102.5 claim, she

25 effectively exhausted her administrative remedies.  Id.  The

26 court reasoned that, contrary to Neveu (which seems to imply that

27 a plaintiff must file suit specifically with the Labor

28 Commissioner), a plaintiff merely has to exhaust her

administrative remedies in <u>some</u> manner (in that case via the DFEH and EEOC).  <u>Id.</u> at *7 n.5.  <u>Paterson</u> did not abrogate the administrative remedy exhaustion requirement recognized in <u>Neveu</u>. It merely clarified that any number of avenues may be used to exhaust them in addition to the filing of a complaint with the Labor Commissioner.  In the present case it is undisputed that Lund did not pursue <u>any</u> administrative remedies and thus has failed to satisfy the exhaustion requirement.[5]

      C.  <u>Wrongful Termination</u>

      Even though plaintiff has not exhausted his administrative remedies under the California Labor Code, he may still maintain a common law claim of wrongful termination in violation of public policy.  <u>See</u> <u>Hentzel</u>, 138 Cal. App. 3d at 303-304; <u>Stevenson v. Superior Court of Los Angeles</u>, 16 Cal.4th 880, 905 (1997) ("An employee's post-termination failure to exhaust administrative remedies has no bearing on whether the termination violated the public policy expressed through the statutory prohibition . . . .").  In order to prevail on a claim

---

[5]    Plaintiff also cites several California cases which he argues represent California courts' abrogation of the exhaustion requirement.  However, in the California case upon which Lund, and the cases cited by Lund, rely, the court upheld plaintiff's claim alleging <u>common law</u> wrongful termination, despite plaintiff's failure to exhaust administrative remedies.  <u>Hentzel v. Singer Co.</u>, 138 Cal. App. 3d 290, 293 (1982).  Thus, in finding that plaintiff's complaint was not foreclosed by Labor Code section 6310, the court merely held that the exhaustion requirement could not abrogate previously existing remedies at common law.  <u>See</u> <u>Leibert v. Transworld Sys., Inc.</u>, 32 Cal. App. 4th 1693, 1704 (1995); <u>Smedley</u>, 820 F. Supp. at 1231 n.4 (noting that, while section 6310 preempts an unexhausted statutory claim, it does <u>not</u> preempt a common law cause of action for retaliatory discharge) (citing <u>Hentzel</u>, 138 Cal. App. 3d 290).  Statutory remedies, however, may be so foreclosed.  <u>See</u> <u>Campbell</u>, 35 Cal.4th at 232.

of wrongful termination, plaintiff must prove he was fired

because he engaged in conduct protected by public policy that was

1) fundamental, 2) firmly established, 3) beneficial to the

public, and 4) embodied in a constitutional or statutory

provision.  <u>Turner v. Anheuser-Busch, Inc.</u>, 7 Cal.4th 1238, 1256

(1994).

When a plaintiff "relies upon a statutory prohibition

to support a common law cause of action for wrongful termination

in violation of public policy, the common law claim is subject to

statutory limitations affecting the nature and scope of the

statutory prohibition."  <u>Stevenson</u>, 16 Cal.4th at 904.  In this

case, plaintiff has predicated his common law wrongful

termination claim solely on defendant's alleged violation of

Labor Code sections 1102.5 and 6310.  (Compl. ¶ 29.)  Therefore,

in order for plaintiff to succeed, 1) he must establish a prima

facie case of retaliation, 2) defendant must provide a

legitimate, nonretaliatory explanation for its acts, and 3)

plaintiff must show this explanation is merely a pretext.  <u>Patten</u>

<u>v. Grant Join Union High School Dist.</u>, 134 Cal.App.4th 1378, 1384

(2005) (citing <u>Akers v. Country of San Diego</u>, 95 Cal.App.4th

1441, 1453 (2002)).

1.  <u>Prima Facie Retaliation</u>

For a plaintiff to establish a prima facie case of

retaliation, he must show that 1) he engaged in a protected

activity, 2) his employer subjected him to an adverse employment

action, and 3) there is a causal link between the two.  <u>Patten</u>,

134 Cal.App.4th at 1384 (retaliation claim predicated on a

violation of 1102.5); <u>Muller v. Automobile Club of S. Cal.</u>, 61

1  Cal.App. 4th 431, 451 (1988) (retaliation claim predicated on a

2  violation of 6310).   In large part, the facts of the case are not

3  disputed.   Defendant argues that, as a matter of law, plaintiff

4  cannot satisfy the first prong because his actions were not

5  protected under either statute.

6                    a.   Labor Code § 1102.5

7          As noted above, Labor Code section 1102.5 prevents an

8  employer from retaliating against an employee for disclosing a

9  potential statutory violation or noncompliance to a governmental

10 agency.   Specifically, Section 1102.5(b) provides that:

11         [a]n employer may not retaliate against an employee for
           disclosing information to a government or law
12         enforcement agency, where the employee has reasonable
           cause to believe that the information discloses a
13         violation of state or federal statute, or a violation
           or noncompliance with a state or federal rule or
14         regulation.

15 Defendant argues that plaintiff's oral reports to the San Joaquin

16 OES and State Warning center were merely part of his job

17 responsibilities and that there was nothing "illegal" about the

18 spill he reported.   Plaintiff counters with the assertion that he

19 "believed the November 17, 2004 ammonia release was a violation

20 of the law given that the incident involved a chemical listed in

21 40 C.F.R. § 355 Appendix A . . . ."   (Pl.'s Opp'n to Def's Mot.

22 for Summ. J. 14-15.)   Thus, even if defendants did not break the

23 law by releasing the ammonia, plaintiff argues that his "belief"

24 that they did is sufficient to make his actions protected.

25 Indeed, a plaintiff bringing a wrongful termination claim need

26 not prove that defendant actually violated the law, but merely

27 that plaintiff was fired for his "reasonably based suspicions."

28 Green v. Ralee Engineering Co., 19 Cal.4th 66, 87 (1998).

The evidence on record, however, does not support plaintiff's assertion.  First, plaintiff now contends that he believed the spill was a "violation of the law pursuant to 40 CFR 335 Appendix A and [42 U.S.C. Section 9603(a)]."  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. 14-15).  These statutes do contain various notification requirements for hazardous chemical spills, but only when a spill is <u>more than</u> 100 pounds.  40 C.F.R. § 355, Appendix A.  Plaintiff was aware, almost immediately after the spill was detected, that only seven (7) pounds of ammonia had been released, perhaps even less.  (Lund Depo. 717:8-12.) Plaintiff admitted that he was well aware that the federal reportable quantity for ammonia was 100 pounds.  (Lund Depo. 36:2-7; 344:13-345:10; 657:25-658:24).  Plaintiff's bare assertion of a belief that the spill violated these two statutory provisions simply cannot be squared with his prior admissions that he knew the spill was below reportable quantities.[6]

Moreover, even if the spill had been greater then 100 pounds, the statutory provisions which plaintiff contends were violated do not contain any language supporting plaintiff's assertion.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. 15 (citing 40 C.F.R. § 355, Appendix A and 42 U.S.C. § 9603(a))).  These two provisions are part of an extensive statutory scheme that seeks to "protect and preserve public health and the environment by facilitating the expeditious and efficient cleanup of hazardous

---

[6]    When asked if he had ever reported instances of illegal conduct observed during his employment at LFC, plaintiff only mentioned incidents involving 1) speeding in a company vehicle, 2) harassment, and 3) assault.  (Lund Depo. 807:23-808:2.)  No mention was made of his purported report of "illegal" activity to the San Joaquin OES and State Warning Center.

waste sites." <u>U.S. v. W.R. Grace & Co.</u>, 429 F.3d 1224, 1240 (9th Cir. 2005).  Nothing in the statutory sections cited by plaintiff makes illegal the spill that occurred on November 17, 2004. Plaintiff himself explained that it is <u>noncompliance</u> with the notification provisions that may subject a business to penalties, <u>not</u> the release of the substance itself.[7]  (Lund Depo. 347:23-348:1; 657:23-24.)  Accordingly, plaintiff's oral report of the November 17, 2004 spill to the San Joaquin OES and State Warning Center was not protectable conduct under Section 1102.5(b).

        Plaintiff raises in his opposition, for the first time, an allegation that defendant also violated California Labor Code section 1102.5(a) by creating a policy that prevented plaintiff from disclosing 1) a follow-up written report, which he believed to be legally necessary and 2) any information about the caustic leak several weeks earlier that he learned of during his investigation.  Plaintiff, however, provides no evidence of such a policy.  While it is true that a follow-up written report was not submitted, plaintiff admits that no one at LFC ever told him not to.  (Lund Depo. 786:22-24; 787:24-788:9.)  In fact, it was at the request of LFC officers that plaintiff and Azevedo prepared the draft written report.  (Krein Decl. ¶ 25; Azevedo Depo. 28:18-29:19.)  Moreover, the only evidence regarding an

-----

        [7]    The situation might be different if, for example, defendants released a reportable quantity of ammonia (i.e. over 100 pounds) and failed to report the spill as required by statute.  Such conduct would likely constitute a statutory violation.  Thus, if plaintiff had informed a government agency about defendants' (hypothetical) <u>failure</u> <u>to</u> <u>report</u>, his conduct would be protected by the whistle-blower statute, California Labor Code 1102.5.  Simply reporting a spill does not rise to this level.

1 investigation into the prior caustic leak is a single email

2 scheduling a team meeting, which was not sent to Krein or Raposo,

3 and makes no mention of a belief that the leak was reportable.

4 (Raposo Deop. Ex. 51.)   There is no evidence that plaintiff was

5 in any manner prevented from submitting any information, had he

6 wished to do so.   Plaintiff's mere assertion that he planned to,

7 but anticipated being prevented from doing so, is insufficient.[8]

8                          b.   Labor Code § 6310

9            California Labor Code section 6310 provides that an

10 employer may not:

           discharge or in any manner discriminate against any
           employee because the employee has . . . [m]ade any oral
           or written complaint to the division, other
           governmental agencies having statutory responsibility
           for or assisting the division with reference to
           employee safety or health, his or her employer, or his
           or her representative.

15 Cal. Lab. Code 6310(a)(1).   Defendant contends that plaintiff's

16 investigation and report of the November 17, 2004 release cannot

17 legitimately be classified as a "complaint."   The court agrees.

18            Plaintiff presents no evidence to support his assertion

19 that the Process Incident Investigation Form filled out after the

20 November 17, 2004 spill constitutes a "complaint about unsafe

21 working conditions."   Such factual allegations are absent from

22 the complaint, and plaintiff (until his opposition to the present

23

24 _____

25       [8]       The court also notes that it is improper for
   plaintiff, in an effort to defeat summary judgment, to raise a
26 new claim at this late stage.   Wasco Prods. v. Southwall Techs,
   Inc., 435 F.3d 989, 992 (9th Cir. 2006).   Plaintiff's complaint
27 contains no such factual allegations, nor any reference to this
   particular statutory provision.   (Compl. ¶¶ 1-15, 22-24) (quoting
28 only 1102.5(b)).

motion) fails to characterize it as such.[9]  When asked whether he
made any complaints about his safety at work, plaintiff noted
general incidents (brought to his attention by others) about a
slippery hallway floor, security issues for the building and
parking lot, and the partial amputation of an employee's finger,
but nothing about the November 17, 2004 spill.  (Lund Depo.
801:23-807:22.)  The only mention of the November 17, 2004
incident in the context of workplace safety is a brief reference
to a finding by the PSM investigation team evaluating the
incident (of which plaintiff was a member) that the contractor
who initially caused the spill was standing in a precarious
position, and could have fallen 16-18 feet.  (Lund Depo. 814:15-
22.)

        The undisputed evidence shows that being a member of
these investigation teams, and filling out these standard PII
forms, were several of plaintiff's basic job responsibilities,
tasks he performed on more than ten separate previous occasions.
(Lund Depo. 741:16-20; 742:5-6; Pl.'s Opp'n to Def.'s Statement
of Facts ¶¶ 10-11 ("Undisputed").)  Courts addressing this issue
have made clear that the hallmark of protected action under a
retaliation statute is that plaintiff assert a right <u>adverse</u> to
the company.  <u>See</u> <u>McKenzie v. Renberg's Inc.</u>, 94 F.3d 1478, 1486
(10th Cir. 1996) (refusing to find an employee's actions
protected by a retaliation statute because plaintiff "never
crossed the line from being an employee merely performing her job

---

        [9]     It is telling that in the roughly twenty pages of
plaintiff's lengthy deposition testimony about the PII form from
the November 17, 2004 incident, neither the word "complain" nor
the word "complaint" appears a single time.

as personnel director to an employee lodging a personal complaint . . . ."); <u>Claudio-Gotay v. Becton Dickinson Caribe, Ltd.</u>, 375 F.3d 99, 102-103 (1st Cir. 2004) (same); <u>cf.</u> <u>Frazier v. United Parcel Service, Inc.</u>, 2005 WL 1335245, *13 (E.D. Cal. 2005) (distinguishing <u>McKenzie</u>, because the plaintiff in <u>Frazier</u> "assert[ed] a right adverse to the company--he refused to obey an order because he was concerned about the safety of his vehicle."). Plaintiff provides no evidence that his report on the November 17, 2004 incident was anything other than a part of his regular duties. Instead, the evidence indicates that filling out the PII forms after an accidental release was not even something plaintiff did of his own initiative, but something he was <u>told to do</u> by management. (Lund Depo. 742:21-23.) Plaintiff's concessions that filling out the PII report was part of his job responsibilities as ordered by management cannot be reconciled with his current assertion that he raised a "complaint" about "work safety issues" that should be protected under section 6310.

The sole response offered by plaintiff to show that the PII report was a "complaint" is that he had "a difficult time convincing Defendant corporate officers and management" to orally report the spill to the San Joaquin OES and State Warning Center, an assertion echoed by counsel at oral argument. (Lund Decl. ¶ 11.) The undisputed evidence, however, does not support this contention. Shortly after the November 17, 2004 release, plaintiff, Plant Engineer Azevedo, and Maintenance Manager Hudspeth telephoned the corporate office to "provide them with the information that [they] had available" about the spill.

18

1  (Lund Depo. 716:9-11.)  During that call, Corporate Safety
2  Manager Winningham asked "why it was necessary to call the San
3  Joaquin [OES] and the State Warning Center."  (Id. 718:20-21.)
4  Plaintiff, as well as Azevedo and Hudspeth, responded with an
5  explanation of why they believed the California reporting
6  requirements necessitated the phone call, at which point the
7  conversation moved on to other concerns.  (Id. 718:21-719:10.)
8  There is no indication that Winningham or anyone on the phone
9  call told plaintiff not to call the San Joaquin OES and State
10  Warning Center.  (Id.)  Nor is there any evidence that management
11  offered any resistance to the explanation proffered, either in
12  that phone call or later.  (Id.)  Mere assertion, in the face of
13  contrary evidence, cannot save a claim at the summary judgement
14  stage.  Fed. R. Civ. P. 56(e); Valandingham, 866 F.2d at 1137.
15  Accordingly, plaintiff's participation in preparing the PII
16  reports does not constitute protected conduct under section 6310.

17          Plaintiff raises for the first time in his opposition a
18  claim that his participation on the PSM investigation team also
19  constitutes protectable conduct under 6310(a)(3).  Section
20  6310(a)(3) prohibits retaliation against an employee who
21  "participated in an occupational health and safety committee
22  established pursuant to Section 6401.7."  Plaintiff, however, has
23  presented no evidence that the PSM investigation team qualifies
24  as a "occupational health and safety committee" under Section
25  6401.7.  First, the statute specifically provides that such a
26  committee may be established as a part of the "employer's injury
27  prevention program."  Cal. Lab. Code 6401.7(f).  Other than mere
28  assertion and a general comparison of the purposes of the two

committees, plaintiff can point to no evidence that the committee formed after the November 17, 2004 incident was pursuant to LFC's injury prevention program, let alone whether such a program exists.

Moreover, section 6401.7 dictates that the California Standards Board shall create criteria by which to evaluate an employer's "occupational health and safety committee," and only those which meet the criteria qualify under the statute.  Cal. Lab. Code 6401.7(e)(1),(f); 8 Cal. Admin. Code § 3203(c) (setting forth the criteria).  Plaintiff has provided no evidence that his PSM investigation team met these criteria.  See Celotex, 477 U.S. at 323 (a motion for summary judgment should be granted, even if the movant provides no affidavits or evidence, if the movant demonstrates to the court that the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").  In fact, the only evidence contradicts such a conclusion, as qualifying committees must "meet[] regularly, but not less than quarterly" and "review[] results of the periodic, scheduled worksite inspections."  8 Cal. Admin. Code § 3203(c)(1), (3).  It is undisputed that the PSM investigation team was created solely to investigate the November 17, 2004 incident.  (Lund Depo. 720:12-13; 720-729.)  It did not meet regularly, nor did review periodic inspection results.[10]  (Id.)

---

[10]    As noted above, it is also improper for plaintiff to raise a new claim in an effort to defeat summary judgment. Wasco, 435 F.3d at 992.  Plaintiff's complaint contains no such factual allegations, nor any reference to this particular statutory provision.  (Compl. ¶¶ 1-15, 25-27) (quoting only

III. <u>Conclusion</u>

Plaintiff has failed to exhaust his statutory remedies under California Labor Code sections 1102.5 and 6310. Accordingly, summary judgment is proper as to these two causes of actions. <u>Campbell</u>, 35 Cal.4th at 333.  This does not preclude plaintiff's common law wrongful termination claim as a matter of law. <u>See</u> <u>Hentzel</u>, 138 Cal. App. 3d at 303-304.  However, plaintiff has also failed to show that his conduct constitutes "protected activity" under either statute, and thus has failed to make out a prima facie case of retaliation.  <u>Patten</u>, 134 Cal.App.4th at 1384.  Accordingly, this court will grant defendant's motion for summary judgment on this claim as well.[11]

IT IS THEREFORE ORDERED that defendant's motion for summary judgment be, and the same hereby is, GRANTED.

DATED:  June 19, 2007

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

6310(a)(1)).

[11]    Because the court grants defendant's motion for summary judgment on all three claims, it need not address the issue of punitive damages.

21